UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-1217

ZOOMINFO TECHNOLOGIES LLC, a Delaware limited liability company,

    Plaintiff,

v.

OPTIOSURGICAL CORPORATION, a Colorado corporation,

    Defendant.

## COMPLAINT

Plaintiff ZoomInfo Technologies LLC ("ZoomInfo"), for its complaint against OptioSurgical Corporation ("OptioSurgical"), alleges as follows:

## INTRODUCTION

ZoomInfo curates a highly accurate database of information used by businesses worldwide in connection with their business-to-business sales, marketing, and recruiting. ZoomInfo invests millions of dollars annually to build and maintain its database and associated intellectual property and to constantly verify, update, and expand upon the information it provides to customers. To use this database, ZoomInfo's customers pay tens and sometimes hundreds of thousands of dollars in subscription fees. The success

of ZoomInfo's business model depends on a customer's faith on the continued availability—and exclusivity—of ZoomInfo's database.

Instead of paying for a subscription like other customers, OptioSurgical gained unauthorized access to ZoomInfo's database, thereby improperly acquiring and gaining knowledge of the data contained therein. OptioSurgical then used this improperly acquired data to market and promote its products and services. ZoomInfo therefore brings this suit to protect its highly valuable intellectual property, recover its damages, and ensure fairness for itself and for its customers.

## PARTIES

1. ZoomInfo is a Delaware limited liability company. Its principal place of business is located in Vancouver, Washington.

2. OptioSurgical is a Colorado corporation. Its principal place of business is located in Lakewood, Colorado.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over OptioSurgical because OptioSurgical's principal place of business is Lakewood, Colorado. Venue is proper in

2

this district because a substantial part of the events and omissions giving rise to this action occurred in this district.  28 U.S.C. § 1391(b)(2).

## FACTS AND ALLEGATIONS

**A.     ZoomInfo's Platform.**

5.     ZoomInfo provides business-to-business marketing data including business contact data, firmographic information, and other competitive intelligence.  It delivers this data to paying subscribers via a password-secured, online graphical user interface.  ZoomInfo's subscribers gain access to its database of marketing information profiling businesses in the United States and across the globe.  ZoomInfo has been recognized as an industry leader in sales and marketing intelligence.  The depth, breadth, and accuracy of ZoomInfo's database is unrivaled in the marketplace.

6.     ZoomInfo has invested, and continues to invest, tens of millions of dollars to develop and maintain the infrastructure, content, and quality of its database.  To deliver timely and comprehensive data to ZoomInfo's clients, ZoomInfo employs hundreds of research analysts focused on building, managing, and updating ZoomInfo's database.  ZoomInfo expends substantial labor, time, and resources to collect, organize, and disseminate the information in its database.  In total, ZoomInfo employs over a thousand people, and has made significant investment in developing and purchasing software, hardware, and other equipment to continuously update and support the

accuracy and comprehensiveness of its database. ZoomInfo's database displays the selection, arrangement, orchestration, compilation, and presentation of the organizational charts, contacts, and other information collected and assembled by ZoomInfo's analysts.

7. ZoomInfo licenses access to its database to thousands of companies. ZoomInfo's database is valuable to companies like OptioSurgical because they use the detailed information collected by ZoomInfo to market their own products and services.

8. The database's value depends on its exclusivity. To protect the database's value, ZoomInfo has implemented reasonable security measures. For example, access to ZoomInfo's database requires a password, and only users that have signed restrictive license agreements receive this password. ZoomInfo also uses mail monitoring and list protection to secure the integrity of its database.

B. **OptioSurgical's Wrongful Conduct.**

9. Instead of acquiring a license from ZoomInfo to access the proprietary and confidential subscriber-only portions of the platform, OptioSurgical gained unauthorized access to ZoomInfo's proprietary information. OptioSurgical then used this information to sell its products and services. This conduct presents a critical threat to ZoomInfo: if everyone did what OptioSurgical has done, ZoomInfo could not survive as a business, and the resource ZoomInfo provides to its customers would be completely lost. Through

4

its actions, OptioSurgical sought to enjoy a "free ride" off of the license fees paid by ZoomInfo's legitimate customers.

10. Beginning in or about October 2020, OptioSurgical began using data obtained through unauthorized access to ZoomInfo's database. OptioSurgical's use of ZoomInfo data is ongoing. These actions have allowed OptioSurgical to acquire and gain knowledge of ZoomInfo's proprietary database using improper means. OptioSurgical used and continues to use the improperly acquired data to market and promote its products and services, including after ZoomInfo notified OptioSurgical's CEO of the company's unauthorized use of ZoomInfo data in January 2021.

11. OptioSurgical acted knowingly, intentionally, and willfully in accessing and using ZoomInfo's proprietary information without authorization and without compensating ZoomInfo. OptioSurgical intentionally and wrongfully profited from its unauthorized use of ZoomInfo's proprietary information, including, but not limited to, by reducing the time, effort, and expense associated with identifying and contacting potential new customers and business opportunities.

12. OptioSurgical knew that ZoomInfo's data was confidential and proprietary and subject to restrictive license agreements. Even so, OptioSurgical knowingly accessed and acquired knowledge of ZoomInfo's data without any license or authorization to do

5

so. On information and belief, OptioSurgical took these actions to profit from ZoomInfo's data without paying ZoomInfo.

13. At all relevant times, OptioSurgical had a duty to train and supervise the conduct of its employees and agents acting on its behalf. OptioSurgical breached this duty in two ways:

(a) by failing to train and monitor its employees and agents adequately; and

(b) by failing to have appropriate policies in place regarding unauthorized access to computer systems, communication, storage networks, and copyrighted works and trade secrets, and/or failing to enforce such policies.

14. On information and belief, all of OptioSurgical's alleged actions here were performed by employees or other agents of OptioSurgical within the scope of their employment or other agency relationship with OptioSurgical, on OptioSurgical's behalf, and for OptioSurgical's benefit.

## FIRST CLAIM FOR RELIEF
**(Theft of Trade Secrets – 18 U.S.C. § 1832, et seq.)**

15. ZoomInfo incorporates herein by reference the allegations in paragraphs 1 through 14.

16. ZoomInfo gathers, organizes, generates, collects, and assembles in-depth, commercially valuable information (including reporting structures, contact information, and other data), expending substantial time, labor, and expense to do so. ZoomInfo's database and the information contained therein comprise a compilation of business information. This information is used in interstate commerce.

17. The compilation of information in ZoomInfo's database derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, those who are not licensed by ZoomInfo to access the database. Specifically, ZoomInfo works as a subscriber-based platform; to gain access to ZoomInfo's collection of information, subscribers must pay a fee. Therefore, ZoomInfo's very business model depends on the secrecy and independent value of its information. If subscribers could get ZoomInfo's information elsewhere for free or by paying less, they would. Non-licensees, such as OptioSurgical, obtain economic value from the acquisition, disclosure, or use of the information in ZoomInfo's database.

18. ZoomInfo has taken reasonable measures to protect and keep the information in its database secret. These measures include limiting access to those customers who agree to the terms of access in the licensing agreement, and requiring password authentication to access the database through its secure online portal.

ZoomInfo also monitors access to the database and use of the information to further ensure its security.

19. OptioSurgical used improper means, including theft, to obtain access to, and acquire information from, ZoomInfo's database. OptioSurgical knew, or had reason to know, at the time it obtained and at the times it used ZoomInfo's information, that this information was obtained from persons or entities owing ZoomInfo a duty to maintain its secrecy.

20. OptioSurgical received and possessed information from ZoomInfo's proprietary database that OptioSurgical knew to have been converted without authorization.

21. OptioSurgical willfully and maliciously misappropriated ZoomInfo's trade secrets by acquiring and using the information contained in ZoomInfo's proprietary computer systems for OptioSurgical's financial gain without authorization.

22. OptioSurgical's actions have damaged ZoomInfo through the lost opportunity to realize licensing revenue and the diminution of the market value of its proprietary information. On information and belief, OptioSurgical has been unjustly enriched by the use of valuable marketing and sales information without paying compensation, and through the consummation of business transactions that would not

have occurred without use of the stolen information. ZoomInfo would, in the alternative, be entitled to a reasonable royalty for OptioSurgical's use of the information.

23. OptioSurgical is liable to ZoomInfo for damages for ZoomInfo's actual losses and OptioSurgical's unjust enrichment, in an amount to be proven at trial, or for a reasonable royalty pursuant to 18 U.S.C. § 1836(b)(3)(B). ZoomInfo is entitled to an injunction preventing OptioSurgical from continuing to acquire, possess, or use information obtained from ZoomInfo's database, or requiring OptioSurgical to pay a reasonable royalty for future acquisition or use. Finally, ZoomInfo is entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C), and to its reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## SECOND CLAIM FOR RELIEF
**(Misappropriation of Trade Secrets – C.R.S. § 7-74-102)**

24. ZoomInfo incorporates herein by reference the allegations in paragraphs 1 through 23.

25. OptioSurgical is liable to ZoomInfo for damages for ZoomInfo's actual losses and OptioSurgical's unjust enrichment, in an amount to be proven at trial. ZoomInfo is entitled to an injunction preventing OptioSurgical from continuing to acquire, possess, or use information obtained from ZoomInfo's database, or requiring OptioSurgical to pay a reasonable royalty for future use. Finally, because OptioSurgical's

misappropriation was attended by circumstances of fraud, malice, or a willful and wanton disregard of the ZoomInfo's right and feelings, ZoomInfo is entitled to exemplary damages under C.R.S. § 7-74-104(2)

## THIRD CLAIM FOR RELIEF
### (Misappropriation of Confidential Information)

26.　ZoomInfo incorporates herein by reference the allegations in paragraphs 1 through 25.

27.　ZoomInfo gathers, organizes, generates, collects, and assembles in-depth, commercially valuable confidential and proprietary information (including reporting structures, contact information, and other data), expending substantial time, labor, and expense to do so.

28.　OptioSurgical intentionally and without permission acquired and used confidential information from ZoomInfo's database.  OptioSurgical has taken a "free ride" on ZoomInfo's skill, labor, and costly and substantial efforts in creating and securing its commercially valuable database.

29.　ZoomInfo has lost profits and suffered the diminution of the market value of its database because of OptioSurgical's actions.  As a result, OptioSurgical is liable to ZoomInfo for compensatory damages including wrongfully derived revenues in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Negligence)

30. ZoomInfo incorporates herein by reference the allegations in paragraphs 1 through 29.

31. At all relevant times, OptioSurgical had a duty to take reasonable care in training and supervising its employees and other agents acting on its behalf.

32. OptioSurgical breached this duty in two ways: (1) by failing to train and supervise its employees regarding basic data security obligations; and (2) by allowing its employees to participate in the unlawful conduct alleged above. A reasonable entity would have implemented and enforced a policy banning this kind of conduct. OptioSurgical failed to do so.

33. It is foreseeable that the failure to train and supervise employees and other agents about appropriate methods for obtaining sales and marketing information for the benefit of OptioSurgical would harm ZoomInfo.

34. As a direct and proximate cause of OptioSurgical's negligence, ZoomInfo lost profits. OptioSurgical's negligence also reduced the market value of ZoomInfo's database. OptioSurgical is therefore liable to ZoomInfo for compensatory damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, ZoomInfo prays for the following relief:

1. Entry of judgment in its favor and against OptioSurgical on all counts;

2. A declaration that OptioSurgical's unlawful conduct was willful and knowing;

3. As to its First Claim for Relief, ZoomInfo's actual damages, restitution for OptioSurgical's unjust enrichment, or a reasonable royalty, in an amount to be proven at trial;

4. As to its Second Claim for Relief, ZoomInfo's actual damages, restitution for OptioSurgical's unjust enrichment, or a reasonable royalty, in an amount to be proven at trial;

5. As to its Third Claim for Relief, compensatory damages in an amount to be proven at trial;

6. As to its Fourth Claim for Relief, compensatory damages in an amount to be proven at trial;

7. An award of exemplary damages for OptioSurgical's willful and knowing misappropriation;

8. Immediate and permanent injunctive relief enjoining OptioSurgical from using ZoomInfo's trade secrets, copyrighted materials, and misappropriated products and services, or requiring OptioSurgical to pay a reasonable royalty for future use;

9. An award of ZoomInfo's costs of suit, including the costs of experts and reasonable attorneys' fees as permitted by law, including 18 U.S.C. § 1836(b)(3)(D), C.R.S. § 7-74-105, and 17 U.S.C. §§ 1203(b)(4)-(5); and

10. An award of pre- and post-judgment interest; and such other relief as the Court may deem just and equitable.

DATED:  May 3, 2021

Respectfully submitted,

BRADLEY BERNSTEIN SANDS LLP

*s/ Heidi Bradley*
Heidi Bradley
Bradley Bernstein Sands LLP
113 Cherry St.
PMB 62056
Seattle, WA 98104-2205
Phone: (206) 337-6551
hbradley@bradleybernsteinllp.com

FORTIS LAW PARTNERS LLC

*s/ Henry M. Baskerville*
Henry M. Baskerville, Atty. Reg. #49431
Fortis Law Partners LLC
1900 Wazee Street, Suite 300

Denver, CO 80202
Phone: (303) 295-9700
Fax: (303) 295-9701
hbaskerville@fortislawpartners.com
*Attorneys for Plaintiff*

14